**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| DATAQUILL LIMITED | ) | |
| | ) | |
| v. | ) | Lead Case No. 2:13-cv-633-JRG-RSP |
| | ) | |
| HUAWEI TECHNOLOGIES CO. LTD. | ) | |
| ET AL. | ) | |
| | ) | |
| | ) | |

**DEFENDANT ZTE (USA) INC.'S SUR-REPLY IN OPPOSITION TO**
**DATAQUILL'S *DAUBERT* MOTION AND MOTION TO STRIKE**

## TABLE OF CONTENTS

I.       Introduction ....................................................................................................................1

II.      Dr. Konchitsky's Background Discussion Is Proper ...........................................................1

III.     Dr. Konchitsky's Opinion About How A Person Skilled In The Art Would
         Understand "a controller" Is Legally Correct ......................................................................1

IV.      Dr. Konchitsky's Opinion About How A Person Skilled In The Art Would
         Understand "telephonic transmission" Is Legally Correct...................................................3

V.       The Lee Articles Describing The Titus EO Application Were Promptly
         Disclosed Upon Discovery ..................................................................................................4

VI.      Dr. Stec Offered Criticism Of Dr. Wecker's Survey, Not Affirmative
         Testimony Regarding "Acceptable Non-Infringing Alternatives" .......................................4

VII.     Conclusion ...........................................................................................................................5

# TABLE OF AUTHORITIES

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008). ........................................................................................................................... 2

*Harari v. Lee*, 656 F.3d 1331 (Fed. Cir. 2011) ............................................................................ 2

## I.     <u>Introduction</u>

Defendant ZTE (USA), Inc. ("ZTE") submits this Sur-Reply in opposition to Defendant DataQuill Limited's ("DataQuill") Daubert Motion And Motion To Strike Portions Of The Expert Reports Of Dr. Alon Konchitsky And Dr. Jeffery Stec ("DQ Daubert Motion") (Dkt. 115) and in response to DataQuill's Reply in support of that motion ("DQ Reply") (Dkt. 124). DataQuill has not demonstrated that any opinions of Dr. Konchitsky and Dr. Stec are improper, and DataQuill will be free to cross-examine them about their opinions at trial.

## II.     <u>Dr. Konchitsky's Background Discussion Is Proper</u>

DataQuill asserts that Dr. Konchitsky "unambiguously" makes non-infringement arguments in paragraphs 37-40 of his opening expert report.  DQ Reply at 1.  DataQuill utterly ignores ZTE's observations that (i) Dr. Konchitsky did not use the term "infringe" or the like anywhere in those paragraphs, and (ii) his non-infringement opinions are in an entirely separate section.  ZTE Response at 1-2.

DataQuill also asserts that Dr. Konchitsky's background discussion cannot provide context for understanding claim terms because the term "bar code scanner" is not in any asserted claims.  However, Dr. Konchitsky's discussion of the specification provides context for how a person skilled in the art in 1993 would have understood "a controller" and "telephonic transmission," which are the relevant claim terms that Dr. Konchitsky discussed in his non-infringement report.

## III.     Dr. Konchitsky's Opinion About How A Person Skilled In The Art <br> <u>Would Understand "a controller" Is Legally Correct</u>

Despite the numerous contrary cases that ZTE cited in its Opposition to DataQuill's Daubert Motion ("ZTE Response", at 3-7), DataQuill continues to misrepresent the law by asserting that "a" has a certain meaning in claims (DQ Reply at 1-3) and asserting that therefore

Dr. Konchitsky's opinions are premised on "legally incorrect interpretations" of the claim language.  Incredibly, although ZTE pointed to a Federal Circuit opinion that expressly states that *Baldwin*[1] does not stand for the proposition for which DataQuill cites it[2], DataQuill continues to rely on *Baldwin*.  Although Federal Circuit precedent clearly states that the meaning of "a" must be evaluated in view of the claim language and specification, DataQuill presents no such analysis, instead continuing is reliance on an improper standard purportedly disclosed in the disavowed *Baldwin* opinion.  In contrast, ZTE cited specific portions of the claim language and specification that support Dr. Konchitsky's opinion.  ZTE Response at 5-7.

DataQuill wrongly accuses ZTE of discovery violations and incorrectly states that ZTE's non-infringement positions only concerned the three terms "reading sensor," "sensor," and "carrier." DQ Reply at 2.  In fact, in response to DataQuill's Interrogatory No. 4 concerning non-infringements contentions, ZTE timely objected to the interrogatory, *inter alia*, because "it improperly and prematurely seeks expert opinions and analyses." Declaration of Stephen Yam ("Yam Decl."), Ex. A, ZTE's Responses and Objections to Plaintiff's First Set of Common Interrogatories, at 9.  Subject to its objections, ZTE identified certain claim elements that were clearly exemplary:  '*For example*, Plaintiff has not met its burden of proof that the Accused Products contain *at least* a "reading sensor", a "sensor", or a "carrier".'  *Id*. at 10 (emphasis added).  Those responses and objections were served on June 9, 2014, and DataQuill never challenged ZTE's objections or alleged any deficiencies in the response to Interrogatory No. 4, nor did it seek to meet-and-confer regarding that response or otherwise seek relief from the Court.

Furthermore, DataQuill's assertion that "ZTE supplemented one month before the

---

[1] *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008).

[2] *See Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011).

*Markman* hearing, identifying the same three non-infringement positions" is misleading. DataQuill alleged certain deficiencies in ZTE's responses to *other* interrogatories (Interrogatory Nos. 1, 3, 5, and 7; *see* Yam Decl., Ex. B, 9/22/14 email from A. Healy to B. Klock).   After a meet-and-confer, ZTE agreed to supplement its responses to *those* interrogatories, not the response to Interrogatory No. 4, and the supplemental responses merely included the same response to Interrogatory No. 4 that had been provided on June 9, 2014.

## IV.   Dr. Konchitsky's Opinion About How A Person Skilled In The Art Would Understand "telephonic transmission" Is Legally Correct

Lacking a valid response to ZTE's arguments, DataQuill again attempts to distort Dr. Konchitsky's opinion.   Dr. Konchitsky did not opine that the asserted patents only cover transmission of speech.   Instead, he opined (citing a dictionary definition) that the term "telephonic" conveys voice or sound to one skilled in the art, as ZTE explained in its opposition brief.  ZTE Response at 8-9; Dkt 118, Ex. 1 at ¶ 68.  Therefore, Dr. Konchitsky opined that, in 1993, one skilled in the art would have understood "telephonic transmission" of data, as described in the asserted patents, to mean audio transmission of data using sound, such as transmission by DTMF audio tones.  ZTE Response at 9; Dkt 118, Ex. 1 at ¶ 69.  Furthermore, Dr. Konchitsky opined that using DTMF over voice frequency bands would allow for transmission using a "2800 baud modem, which was the standard at the time," and that such transmission would have been ideal for simple communication of bar code values, which contain small amounts of data and do not require much bandwidth.  *Id.*

DataQuill also states that the words "DTMF (dual tone multi-frequency)" do not appear in the patents.  Indeed, it is the absence of *any* described technique for transmitting data in the patents that makes it necessary to determine what "telephonic transmission" of data would have meant to one skilled in the art.  DataQuill's expert, Dr. Rhyne, asserts that CDMA could be used

3

for telephonic transmission of information.  Dkt 118, Ex. 2 at ¶ 133.  However, the first telephone network implementing CDMA was not deployed until 1995 (well after any priority or effective filing date of the patents), so one skilled in the art would not have understood the patents to refer to CDMA.  *See* https://www.cdg.org/technology/cdmaone.asp.

DataQuill does not dispute that Dr. Konchitsky is a qualified expert in the field. Therefore, his opinion as to how a person skilled in the art in 1993 would have understood the term "telephonic transmission" in the asserted claims is proper and relevant.

**V.     The Lee Articles Describing The Titus EO Application**
**        Were Promptly Disclosed Upon Discovery**

DataQuill asserts that ZTE "failed to disclose the Lee articles in its Invalidity Contentions," implying that ZTE knew of the articles and deliberately omitted them from its Invalidity Contentions.  In fact, as stated in ZTE's opposition brief (ZTE Response at 11), those articles were not identified until January 2015.  More specifically, the articles were identified on or about January 12, 2015, and they were promptly produced to DataQuill on January 20, 2015 and discussed in Dr. Konchitsky's expert report served on January 30, 2015.

Furthermore, DataQuill concedes that it knew the Titus EO Application constituted prior art to the patents unless the patents are entitled to their priority date.  DQ Reply at 4.  DataQuill also knew that entitlement to the priority date is an issue in this litigation.  Accordingly, DataQuill was well aware of the need to conduct discovery regarding the Titus EO Application, in case the priority date is not granted.  Therefore, DataQuill cannot claim prejudice because it has lost the opportunity to conduct discovery regarding the Titus EO Application, because such need existed regardless of the Lee articles.

**VI.    Dr. Stec Offered Criticism Of Dr. Wecker's Survey, Not Affirmative**
**        Testimony Regarding "Acceptable Non-Infringing Alternatives"**

The phrase "acceptable non-infringing alternative" is a term used in connection with

damages analysis.  It refers to an alternative design that an accused infringer might have adopted, and it is used to support a damages argument that the accused infringer would not have paid more to license the asserted patents than it would have cost the accused infringer to switch to the acceptable non-infringing alternative.

Dr. Stec did not offer any opinions on damages, and did not opine on any acceptable non-infringing alternatives.  What Dr. Stec did was offer a criticism of Dr. Wecker's survey, which presented to respondents a hypothetical scenario as an alternative way to achieve the functionality of obtaining electronic content without using the Google Play app.  In particular, Dr. Stec pointed out that there are other ways of achieving that functionality, without any cost to the customer.  Therefore, Dr. Stec opined that the survey's purported assessment of a respondent's willingness to pay for certain functionality was flawed.

Moreover, DataQuill does not dispute that the alternatives Dr. Stec mentioned have not been accused of infringement, and in its briefing on this issue DataQuill has not asserted that those alternatives are infringing.

**VII.   Conclusion**

For the foregoing reasons, DataQuill's motion should be denied.


Dated: April 20, 2015                    Respectfully Submitted,

                                         */s/  Eric H. Findlay*
                                         Craig L. Uhrich
                                         Texas Bar No. 24033284
                                         craiguhrich@everettupshaw.com
                                         David A. Bailey
                                         Texas Bar No. 24078177
                                         davidbailey@everettupshaw.com

                                         UPSHAW PLLC
                                         811 S. Central Expressway, Suite 307
                                         Richardson, TX 75080

Telephone: (214) 680-6005
Facsimile: (214) 865-6086

Brian L. Klock
Virginia Bar No. 37808
bklock@fchs.com
Edmund J. Haughey
Virginia Bar No. 42845
ehaughey@fchs.com
Chitra M. Kalyanaraman
New Jersey Bar No. 031302010
ckalyanaraman@fchs.com
Stephen K. Yam
Virginia Bar No. 81104
syam@fchs.com

FITZPATRICK, CELLA, HARPER & SCINTO
975 F Street, NW
Washington, DC 20004
Telephone: (202) 721-5427
Facsimile: (202) 530-1055

Eric H. Findlay
TX Bar No. 00789886
efindlay@findlaycraft.com

FINDLAY CRAFT, P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

Counsel for Defendant ZTE (USA) Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 20th day of April 2015.


 /s/ *Eric H. Findlay*
Eric H. Findlay