# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| DATAQUILL LIMITED, | § | 2:13-CV-633 |
| Plaintiff, | § | LEAD CASE |
| | § | |
| v. | § | |
| | § | |
| HUAWEI TECHNOLOGIES CO LTD ET AL. | § | |
| | § | |
| ZTE CORPORATION ET AL. | § | 2:13-CV-634 |

## ORDER

Currently before the Court is Defendant ZTE USA Inc.'s ("ZTE") Motion to Exclude the Expert Testimony of William Wecker and Certain Expert Testimony of Robert Mills (Dkt. No. 116, "Motion to Exclude").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go

about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," *quoting* FED. R. EVID. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

**DISCUSSION**

In its Motion to Exclude, Defendant ZTE sets forth several grounds for which to exclude the testimony of William Wecker ("Dr. Wecker").

First, Defendant argues Dr. Wecker's survey did not use a representative sample and that the sample size itself was too small. (Mot. at 3, 9.) Specifically, Defendant argues "the sample used in Dr. Wecker's survey is, on its face, not representative of the target population of U.S. adults, and is insufficient for purposes of statistical analysis." (*Id*. at 4.) Defendant continues, arguing "[p]lain logic dictates that the views of [only 0.001%] ZTE customers cannot be deemed representative, and Dr. Wecker offered no scientific or statistical basis to validate using such a small sample to characterize the purported behavior of ZTE customers." (*Id*. at 9.)

Throughout its briefing under this heading, Defendant repeatedly emphasizes that Dr. Wecker's survey fails to represent approximately 98% of the U.S. population. (*See, e.g.*, *id*.) ("Thus, almost 98% of the U.S. adult population had no opportunity to participate in Dr. Wecker's survey."); (*id*. at 6) ("Here, almost 98% of the target population had a zero chance to be sampled.") (*id*.) ("This completely ignores the fact that almost 98% of U.S. adults had no opportunity to participate in the survey . . . .") (Reply at 4) (arguing Dr. Wecker's survey that excluded 98% of U.S. adults from the possibility of participating was not adequate under the law). Moreover, Defendant argues Dr. Wecker's approach deviates from the best practice guidelines set forth by the American Association of Public Opinion Research ("AAPOR") and relies on an inappropriate sample selection. (*See* Mot. at 4–5) (stating Dr. Wecker's sample was not a so-called probability sample representative of the U.S. target population of U.S. adults but rather composed of individuals who voluntarily signed up and were given incentives to participate).

The Court finds Defendant failed to show that the representative sample Dr. Wecker relied upon justifies the exclusion of his results. The issues Defendant raises are directed toward weight and sufficiency of evidence more than methodology. Any perceived deficiencies or imperfections in Dr. Wecker's survey are, therefore, best addressed during cross-examination of the witness. Moreover, a survey designed to extrapolate the results of a sample unto a larger population must—by its very definition—analyze a population of some percentage less than 100% of the total population. Because Defendant has failed to demonstrate that the sample size Dr. Wecker selected was not statistically significant, the Court denies Defendant's motion on this ground as well.

Second, Defendant argues Dr. Wecker did not follow industry best practices in conducting his survey and did not use appropriate statistical reporting techniques in analyzing his survey results. (Mot. at 7, 9.) Regarding Dr. Wecker's statistical reporting techniques, Defendant argues its analysis of Dr. Wecker's approach "reveals several opportunities for errors that are not adequately explained or taken into account in Dr. Wecker's opinions." (*Id*. at 9.) Moreover, Defendant argues Dr. Wecker used a so-called quota sample rather than a probability sample which, according to its own expert, is the *preferred* methodology. (*Id*. at 10.) (emphasis added).

The fact that Dr. Wecker's survey may be imperfect or conducted in an alternative fashion does automatically support Defendant's conclusion that Dr. Wecker's methodology was unreliable. Similarly, regarding the industry best practices, as noted previously, the Court finds such perceived deficiencies can be adequately addressed through vigorous cross-examination of this witness. Accordingly, the Court denies Defendant's motion on this ground as well.

Finally, Defendant argues the opinions of Mr. Robert Mills (Plaintiff's damages expert) should be excluded for relying on Mr. Wecker's opinions. (Mot. at 10.) Because the Court finds

Dr. Wecker's opinions sufficiently reliable to survive Defendant's motion, the Court similarly finds Mr. Mills may rely on Dr. Wecker's survey results. Accordingly, Defendant's motion is denied as to this ground as well.

## CONCLUSION

Having considered all of Defendant's objections, Defendant's Motion to Exclude the Testimony of William Wecker (Dkt. No. 116) is **DENIED**.

**SIGNED this 11th day of June, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE