# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| DATAQUILL LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>ZTE CORPORATION, ET AL.,<br><br>*Defendant*. | § § § § § § § § § § § | CASE NO. 2:13-CV-633-JRG |
| DATAQUILL LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>ZTE CORPORATION, ET AL.,<br><br>*Defendant*. | § § § § § § § § § § § § | CASE NO. 2:13-CV-634-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Renewed Motion for Judgment as a Matter of Law, or Alternatively for Remittitur and/or a New Trial, Pursuant to Federal Rules of Civil Procedure 50 and 59 (Dkt. No. 170[1]) ("Mot.") filed by Defendant ZTE (USA) Inc. ("ZTE"). Plaintiff DataQuill Limited ("DataQuill") opposes the Motion. (Dkt. No. 171 ("Resp.").) For the reasons set forth below, the Court finds that ZTE's Motion should be **DENIED** as to the issues of the October 13, 1993 Priority Date, Validity of the Patents-in-Suit, and the alleged Erroneous Claim Constructions. The damages issues raised by ZTE's Motion are **CARRIED**.

---

[1] Unless otherwise indicated, all references to the docket are to filings from the -633 case.

## I. BACKGROUND

The Court held a jury trial in this case on June 15, 2015, and the jury returned a unanimous verdict on June 18, 2015. The jury found that that the asserted claims were not invalid; that the asserted claims were infringed; that ZTE had willfully infringed; and that $31,500,00.00 was the "sum of money, if paid now in cash" which "would fairly and reasonably compensate DataQuill for ZTE's infringement up through March 2015." (Dkt. No. 29 in the -634 case ("Verdict").) ZTE asserts that, in the nearly 20 hours of testimony presented at trial, the jury did not have sufficient evidence for its findings.

## II. Applicable Law

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence.

*Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden* 393 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

### III. Analysis

#### A. Validity

An issued patent is presumed valid. 35 U.S.C. § 282; *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). ZTE has the burden to show by clear and convincing evidence that the asserted claims were anticipated by or obvious over the prior art. *Microsoft Corp. v. i4i*

*Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). To prevail on judgment as a matter of law, moreover, ZTE must show that no reasonable jury would have a legally sufficient evidentiary basis to find for DataQuill. Fed. R. Civ. P. 50. "Generally, a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012) (internal quotation marks omitted).

ZTE argues that "[n]o reasonable jury could have concluded that the patents-in-suit are valid in light of ZTE's clear evidence of invalidity." (Mot. at 23.) More specifically, ZTE argues that "all of the asserted claims are invalid based on alternative grounds involving three independent primary prior art references—the Titus EO Application, IBM Simon, and [U.S. Patent No. 5,426,594 ("the Wright patent")]." (*Id.* at 24.)

**1) The Priority Date**

As an initial matter, the Court notes that two of the three primary prior art references, the Titus EO Application and IBM Simon, do not qualify as prior art if the Patents-in-Suit are entitled to the priority date of United Kingdom Application No. 9321133 ("UK Application"), the application to which the Patents-in-Suit claim priority. ZTE argues that the Court should find that the priority date of the Patents-in-Suit is actually later than the October 13, 1993 date of the UK Application, and, in fact, is sometime in 1994. If, but only if, the 1994 priority date applies would the Titus EO Application and IBM Simon references qualify as prior art. ZTE argues that, because two limitations of the Patents-in-Suit, the "microphone" and the "integral cellular phone," were not present in the UK Application, the Patents-in-Suit cannot claim priority from

the 1993 UK Application. (Mot. at 18–19.) ZTE argues that "DataQuill admitted that material was added between the filing of the UK Application and the [International Application No. PCT/GB94/02101 (PCT Application)]." (*Id.* at 19.) ZTE further argues that "DataQuill's witnesses testified that there is no actual disclosure in the UK Application of either 'microphone' or 'integral cellular phone.'" (*Id.*)

DataQuill responds by arguing that "Dr. Rhyne testified that the UK Application discloses every limitation of the asserted claims" and "prepared a lengthy document (DX 57) explaining his opinions and identifying the specific passages where the UK Application supports all the claim limitations." (Resp. at 27–28.) DataQuill also points to the following excerpt from the UK Application as proof of the "cellular phone technology" limitation:

> Also, in the case of the pen 10 without a base station for the modem, the pen could be provided with cellular phone technology rather than a socket for a telephone plug so that data could be downloaded via a telephony link without needing to be connected to a physical telephone cable.

(DX 18, at 19.) DataQuill argues that "[t]here is no dispute that this passage discloses a cellular phone." (Resp. at 30). As support, DataQuill points to the following testimony from Dr. Konchitsky:

> Q. Okay. But you agree that the disclosure speaks to a cellular phone, and that's why you've drawn it here, correct?
>
> A. Yes.

(6/17/2015 A.M. Trial Tr. (Konchitsky), Dkt. No. 40 in the -634 case, at 82:11–14); *see also* (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 91:11–92:9.) DataQuill further argues that a "cellular phone necessarily discloses a microphone," (Resp. at 30), and points to the following testimony from Dr. Konchitsky as support:

> Q. (By Mr. Payne) A cellular phone, by definition, has a microphone, correct, sir?

5

A. Correct.

(6/17/2015 A.M. Trial Tr. (Konchitsky), Dkt. No. 40 in the -634 case, at 81:15–20); *see also* (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 92:7–9.)

The parties dispute whether this question is one of law or of fact. *Compare* (Mot. at 18) *with* (Resp. at 26.) After consideration of the cited case law and the arguments from both parties, the Court finds that the question of priority, as presented in this case, is a question of fact and one already considered by the jury prior to rendering its verdict. As DataQuill notes, the proper question that was posed to the jury was whether the UK Application adequately disclosed the claim limitations identified by ZTE. (*Id.*) The jury was presented with the excerpt from the UK Application which DataQuill argues disclosed the "microphone" and the "integral cellular phone." Further, both experts presented the jury with testimony regarding whether this passage did or did not disclose these elements. *See* (6/16/2015 P.M. Trial Tr. (Konchitsky), Dkt. No. 38 in the -634 case, at 117:2–125:17; 6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 89:1–94:12.)

The jury was properly instructed on the law, was free to judge the credibility of the witnesses, and weigh competing evidence. After consideration of all the presented evidence, the jury found that the Patents-in-Suit were valid. The Court will not substitute its judgment for that of the jury under the clear and convincing standard on the disputed issues of fact underlying the validity decision, including the decision of the priority date of the Patents-in-Suit. The Court does not find that no reasonable jury could have found that the Patents-in-Suit were not entitled to an October 13, 1993 priority date. The Court further does not find that no reasonable jury could have found the patents in suit to not be invalid.

2) **The "Hand-Holdable" Limitation**

The Court initially notes that the Titus EO Application does not qualify as prior art if the

6

priority date is October 13, 1993. However, even if the jury had found that the Patents-in-Suit were not entitled to an October 13, 1993 priority date, there was separate and substantial evidence to support the jury's finding that the Patents-in-Suit were not invalid.

ZTE argues that "DataQuill's expert, Dr. Rhyne, based part of his validity analysis of the Titus EO Application on an improper interpretation of 'hand-holdable' at odds with the Court's claim construction." (Mot. at 25.) ZTE then argues that "using the actual claim construction of the Court, which requires only that a device be 'held by one hand in normal use,'" the Titus EO Application and the Wright patent disclose the "hand-holdable" limitation. *See* (Mot. at 25–27); *see also* (6/17/2015 A.M. Trial Tr. (Konchitsky), Dkt. No. 40 in the -634 case, at 62:18–63:9; 6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 160:23–161:6.) Further, ZTE argues that "Dr. Rhyne further admitted that, although the Titus EO device could be operated while resting it on a user's arm, it could also be held in one hand without resting it on the user's arm." (Mot. at 26.) Finally, ZTE argues that various combinations of prior art with Takahashi and Simon also disclose the "hand-holdable" limitation. (*Id.* at 26–27.)

DataQuill responds by arguing that the "court construed hand holdable to mean 'can be held by one hand in normal use'" and that "Dr. Rhyne testified that the Titus EO was not hand holdable under this construction because it required at least two hands to operate." (Resp. at 34.) Similarly, DataQuill argues that Dr. Rhyne testified that the Wright patent also failed to disclose the "hand-holdable" limitation found in the Patents-in-Suit. (*Id.* at 15); *see* (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 134:13–136:3.)

For example, with respect to the Wright reference, Dr. Rhyne testified:

> A. But I've yellowed out here to show you that it includes a keyboard -- a full-stage keyboard with letters and numbers, a -- a touch pad where you can do handwriting, and it includes inside this dotted box that says it's the personal computer, a printer, and a display, and here's also some

7

> capability to do voice work. That's what Wright has. And I don't see that, particularly when I've got a full-size keyboard, a handwriting device, I've got a separate printer and a separate display as being in a package that could be hand-holdable.

(6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 135:11–21.)

Further, Dr. Rhyne testified that the PTO had previously considered the Wright patent in relationship to the Patents-in-Suit and had not found that the patents invalid:

> Q. And in addition to the Patent Office considering the EO, the Simon, and Takahashi, did it also consider the Wright patent?
>
> A. Yes, it did, during the '304 re-exam and both examinations and the re-examination of the '591.

(6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 134:8–12.)

The jury agreed with Dr. Rhyne over Dr. Konchitsky, and the Court agrees that DataQuill's evidence shows that a reasonable jury could find that ZTE has not met its burden to establish invalidity under the heightened, clear and convincing standard. The Court will not substitute its judgment for that of the jury. The Court does not find that no reasonable jury could have found that the asserted patents were valid in view of the combinations set forth above.

### 3) The "Updating Previously Stored Information" Limitation

In addition to the "hand-holdable" limitation, ZTE also argues that it presented clear and convincing evidence of the disclosure of the "updating previously stored information" limitation in the Titus EO Application, IBM Simon, and the Wright patent. *See* (Mot. at 27–29.) For example, ZTE points to the following testimony from Dr. Konchitsky regarding the disclosure of the "updating previously stored information" limitation in the Titus EO Application:

> Q. What was your conclusion about the controller being responsive to a command to cause downloading of information from a remote processing center as Limitation 8?
>
> A. That the Titus EO application discloses that limitation because it responds to user inputs, as I explained, to download information and

update product information, as we can see here on Page -- in the Schnee reference in Page 42. Therefore, this limitation is met.

(6/16/2015 P.M. Trial Tr. (Konchitsky), Dkt. No. 38, at 136:25–137:9.) Dr. Konchitsky gave similar testimony with regard to IBM Simon and the Wright patent. *See, e.g.,* ((6/17/2015 A.M. Trial Tr. (Konchitsky), Dkt. No. 40, at 24:18–22 (regarding IBM Simon), 64:21–24 (regarding the Wright patent).)

DataQuill responds that the jury was presented with testimony from Dr. Rhyne countering each of Dr. Konchitsky's opinions regarding this particular claim limitation. *See* (Resp. at 35–37 (Titus EO Application), 40–42 (IBM Simon), 42–43 (the Wright patent).) For example, DataQuill points to the following testimony from Dr. Rhyne regarding the Titus EO Application's alleged disclosure of the "updating previously stored information" limitation:

> Q. And why specifically do you disagree with his statement?
>
> A. This picture shows an order-taking screen. This is the way the salesman comes in, and I'm talking to you as the doctor and say: Well, what kind of hypodermic needles do you need? And if you look at that, I think this is a list of various types of hypodermic needles that the Titus company would like to sell you. And what it shows you here, the little black arrow that comes in, is, if you take the stylus and you say, I want to buy four of them, you can pencil in four or stylus in four. But that's information that's being captured by the salesman, and it's being sent back to the Titus Company. I don't see where there's anything in this particular example, which was the only example that Dr. Konchitsky used -- I don't see anything here that supports the statement that he made in black above this.
>
> Q. Why is that not the claimed update?
>
> A. It's not changing information that was previously stored on the device as a result of a download that was requested, okay?

(6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 109:17–110:14.) Dr. Rhyne similarly testified regarding the disclosure of this limitation in IBM Simon and the Wright patent. *See, e.g.*, (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 124:17–125:19 (IBM Simon), 137:12–24 (the Wright patent).)

The jury was free to weigh the competing testimony and the credibility of the witnesses. Ultimately, the jury agreed with DataQuill's expert. After consideration of the admitted evidence, including evidence regarding whether the Titus EO Application, IBM Simon, or the Wright patent disclosed the "updating previously stored information" limitation, the jury found that the asserted patents were valid. *See, e.g.*, (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 109:17–110:14 (Titus EO Application), 124:17–125:19 (IBM Simon), 137:12–24 (the Wright patent).) The Court will not substitute its judgment for that of the jury, where under the clear and convincing standard, the jury found the patents-in-suit were not invalid. The Court does not find that no reasonable jury could have found the asserted patents not invalid based on the presented evidence.

### 4) The "Updating a Program" Limitation

ZTE argues that "DataQuill presented no rebuttal to the clear, undisputed evidence that the Titus EO Application discloses 'updating a program.'" (Mot. at 29.) ZTE further argues that "[i]f the asserted claims are held not to be entitled to the October 13, 1993 priority date, the Titus EO Application discloses the recited 'updating a program' limitation." (*Id.* at 29–30.) DataQuill responds by arguing that "[t]here is no evidence AT&T ever implemented the updating program feature or that Titus publicly used the updating program feature in its system." (Resp. at 37–38); *see also* (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 111:13–24.)

First, the Court does not find that the asserted claims are not entitled to the October 13, 1993 priority date. The jury properly made that decision when they returned their verdict. Based on the Court's instructions, the priority date decision is just one of many decisions the jury must make in finding validity and infringement. These ultimate decisions necessarily subsume several underlying decisions such as determining the correct priority date. Furthermore, the jury agreed

with DataQuill's expert after weighing the testimony and judging the credibility of the witnesses.

After considering the presented evidence, including that AT&T had never implemented the alleged updating program feature, the jury found that the asserted patents were valid. *See, e.g.*, (6/18/2015 A.M. Trial Tr. (Rhyne), Dkt. No. 43 in the -634 case, at 111:13–24.) The Court will not substitute its judgment for that of the jury where the jury reached a result supported by reasonable evidence. The Court does not find that no reasonable jury could have found the asserted patents were valid in view of the presented evidence and will not overturn the jury's finding. To the extent ZTE raises other invalidity arguments in its Motion, the Court similarly does not find that no reasonable jury could have found the asserted patents were not invalid in view of the evidence presented during the trial.

**B. New Trial Based on Alleged Erroneous Claim Constructions**

The Court previously construed the claim terms of the Patents-in-Suit on January 27, 2015. (Dkt. No. 105). For the reasons set forth below, the Court declines to revise its ruling on the constructions of the claim terms at issue in this case.

On November 4, 2014, Magistrate Judge Roy S. Payne held a *Markman* Hearing during which the Parties presented oral argument on the claim terms at issue in this case. (Dkt. No. 90.) The Court issued its Claim Construction Order on January 27, 2015. (Dkt. No. 105.) After the Claim Construction Order issued and before trial, the Parties identified two issues regarding the correct construction of "a controller" and "telephonic transmission" and briefed the issues prior to a hearing held on May 15, 2015. (Dkt. Nos. 115, 118, 124, 128); *see also* (May 15, 2015 H'rg Tr., Dkt. No. 139, at 29:21–30:4.) The constructions of "a controller" and "telephonic transmission," which were the only issues regarding the correct constructions re-raised before the Court after the issuance of the Claim Construction Order, were resolved on June 11, 2015. (Dkt.

11

No. 149.) Now, after trial has been completed and a verdict returned, ZTE seeks a new trial on alleged claim construction issues that were not previously raised before the Court. This is untimely in the extreme.

Claim construction has received full and fair treatment, and the Court declines to revisit its previous Orders regarding the correct construction of the Patents-in-Suit. The time to raise any issues or supposed errors in claim construction was before trial, not after nearly 20 hours of testimony and a jury verdict finding infringement and validity. Accordingly, ZTE's arguments regarding erroneous claim constructions are clearly untimely, and ZTE's Motion in regard to any alleged claim construction errors is **DENIED**.

## IV. Conclusion

For the reasons set forth above, the Court finds that the jury's verdict of validity is supported by adequate evidence presented at trial and should not be disturbed. Further, ZTE's request for a new trial based on alleged errors in claim construction is untimely. ZTE did not seek clarification or correction prior to trial. Accordingly, Defendant ZTE's Renewed Motion for Judgment as a Matter of Law, or Alternatively for Remittitur and/or a New Trial, Pursuant to Federal Rules of Civil Procedure 50 and 59 (Dkt. No. 170) should be and is hereby **DENIED** as to the issues of the October 13, 1993 Priority Data, Validity of the Patents-in-Suit, and the alleged Erroneous Claim Constructions. The damages issues raised in ZTE's Motion are **CARRIED**, and will be addressed by the Court in a subsequent opinion.

**So ORDERED and SIGNED this 13th day of October, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE